**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| THE ESTATE OF ISABELLA "BELLA" HERNDON, JOHN HERNDON, J.H., a minor, AND T.H., a minor,<br><br>*Plaintiff-Appellants*,<br><br>v.<br><br>NETFLIX, INC.,<br><br>*Defendant-Appellee*. | Civil Appeal No. 25-7760 |

**MOTION FOR EXTENSION OF TIME TO FILE
APPELLANTS' OPENING BRIEF & EXCERPTS OF RECORD**

Pursuant to Federal Rules of Appellate Procedure 2, 26, and 27, and to Ninth Circuit Rule 31-2.2, Plaintiff-Appellants the Estate of Isabella "Bella" Herndon, John Herndon, J.H., a minor, and T.H., a minor, hereby respectfully request and move for a 70-day extension of time to file their Opening Appellate Brief and Excerpts of Record, up to and including, **August 31, 2026**, for the reasons that follow.

This is a wrongful-death and survivor action that arose out of the death of a 15-year-old girl. The Plaintiff-Appellants are her surviving father and brothers. Originally, it was expected that there would be three appellate counsel available to prosecute this appeal, but the lack of available counsel, its extraordinary complexity, a newborn child, as well as major illnesses and disruptions warrant more time.

1

There are *five* key reasons that justify an extension of time to brief this appeal that are summarized here and then discussed in further detail below and in the supporting declaration:

(1)     **Birth of a Newborn Infant Child**: The former lead appellate counsel in this matter has recently expressly a willingness to return to prosecute this appeal but will need more time because his newborn infant was born June 14, 2026.

(2)     **Illnesses & Health Conditions**: The undersigned counsel has a family member who's suffering from serious health issues and the undersigned has gotten both sick, forcing a quarantine and dealing with a flare up of a seriously disruptive chronic health issue.

(3)     **Extraordinary Legal Complexity**: This appeal, which has been to the Supreme Court and back, presents numerous issues of extraordinary complexity ranging from novel questions of state-law to developments on federal jurisdiction.

(4)     **Other Time-Sensitive Commitments**: In addition to this matter, the undersigned faced other time-sensitive commitments that, if not acted upon urgently, could have major consequences for extremely vulnerable persons suffering under clear legal violations but otherwise without counsel.

(5)     **Professional Courtesies**: The non-profit appellate counsel in this case have never opposed an extension request in any forum and regularly offer opposing counsel more time than requested, as they will do in this case.

\* \* \* \* \*

**<u>First</u>**, the essential background is that the families of the deceased children in this case are represented by a small non-profit law firm that had coordinated the involvement of other counsel. This case previously came before the Ninth Circuit and to the Supreme Court, was remanded by the Supreme Court, remanded further back to the District Court by this Honorable Court, and now is presently pending before this Honorable Court.

The undersigned counsel is the only counsel presently willing and able to prosecute this matter. The undersigned has tried to see if there are other counsel but the counsel who assisted in the District Court are either too busy to participate meaningfully in the appeal or have already maxed out their volunteer commitments of part-time work to the non-profit. This has left the undersigned without meaningful assistance for the appeal. Recognizing that assistance was needed, the undersigned has sought the assistance of other counsel.

One such counsel is Mr. Gregory Keenan. He was the lead appellate counsel when this case was previously on appeal before this Honorable Court and was the principal drafter to the successful certiorari petition to the U.S. Supreme Court. Mr. Keenan, however, had to take a leave of absence from the regular practice of law in late 2024 to assist his wife during her pregnancy with their first-born child and caring for his first-born child born April 2025. His first child turned one in April 2026.

3

Mr. Keenan has expressed a willingness to participate and his participation would be essential as he was primary lawyer, lead counsel, principal draft, and arguing counsel at oral argument in the previous appellate proceedings in this matter. He is willing to participate, *but* his second child was born on June 14, 2026, so he needs roughly at a month or so to get his life situated and then he can begin assisting in earnest on the appeal, which would give him roughly 5 weeks total to work on the appeal, while caring for a newborn infant of one month old and a one-year-old.

Notably, Mr. Keenan has not been not regularly practicing law and is coming back to participate in this case to help fulfill obligations to prosecute this appeal in good faith, but was dealing with caring for a one-year-old child and a wife dealing with a difficult pregnancy before then, such that earlier participation would not have been realistic. Even this timeframe will be tough.

As this Honorable Court has noted, "**attorneys, like everyone else, have critical personal and familial obligations**." Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010). Mr. Keenan, assisted by the undersigned, will be able to fulfill the obligations to the clients and to this Honorable Court and get the brief submitted then. Given this extraordinary situation, further time is appropriate. Indeed, it is "important to the health of the legal profession that attorneys strike a balance between these competing [personal and professional] demands on their time." Ahanchian, 624 F.3d at 1259.

4

**Second**, the undersigned has been dealing with significant health disruptions, both himself and within his family.

The undersigned has an immediate family member who is dealing with cancer of a major organ, major pulmonary / lung issues separately from the cancer that make breathing difficult, and serious eye issues and complications. This has had a big impact upon the undersigned.

Moreover, in the period of the last extension, the undersigned became sick with an acute illness that presented with a fever that was so high in temperature and sustained in length that it the undersigned was unable to work, had to quarantine to avoid spreading a potentially serious viral illness to others (especially vulnerable persons), and considered seeking hospitalization before the fever ultimately broke and the undersigned still needed days more to recover. This acute illness put the undersigned back significantly on work progress, unable to do much work at all for over a week.

In addition, after the acute illness, a chronic health issue that presents in the undersigned flared up and itself caused major disruptions in my ability to work, both on this appeal and on other matter. This chronic health issue makes it almost impossible to read for any sustained period, to write / draft in any meaningful manner. So, after the acute illness, the flare up of this chronic health issue also presented major disruptions.

***Third***, the undersigned has worked on many appeals presenting questions of first impression.  This one is by far the most significant – presenting complexities related to numerous dead children, intersecting questions of cutting-edge technologies, and  numerous novel questions of law.  Even if the undersigned was at full capacity, which I have not been, it would required significant help in order to be appeal.

What's worth emphasizing is that the family member of this deceased girl struggled to find competent counsel in order to prosecute and were able to find representation by a small non-profit that had appellate counsel willing to take their case.

This appeal presents an unusual number of issues on appeal given how many were decided below.

Ordinarily, a trial court only addresses what is necessary to dispose of a case. Cf. PDK Labs., Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J. concurring impart and concurring in the judgment) (discussing the "cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more").  In cases where the trial court decides one or two dispositive issues, such that the appeal presents just those few issues, shorter briefing periods make sense.

Here, by contrast, the inordinate number of issues addressed and decided by the District Court below require more time to fully research and clearly and concisely brief those issues on appeal. Indeed, the District Court's opinion addressed and decided at least 8 major issues, including extremely complex questions of both procedural and substantive law and of both federal law and California state law Pointedly, this appeal implicates at least the following issues:

1.      Whether, as a matter of statutory interpretation, the Class Action Fairness Act ("CAFA") gives federal jurisdiction over a dispute between California plaintiffs and a California defendant where no non-California citizen has been identified either as a party to this dispute nor has been identified as a member of the class. See 28 U.S.C. § 1332(d).

2.      If CAFA is properly construed to permit jurisdiction in such a situation, then whether, as a matter of Constitutional interpretation, the District Court's reading of CAFA is Constitutionally permissible under the U.S. Constitution's requirement of minimal diversity for suits that do not arise under federal law. See U.S. Const. Art. III, § 2.

3.      Whether California Anti-SLAPP law is applicable in proceedings in federal court.

4. Whether public-interest exceptions to California's Anti-SLAPP law, contained in Section 425.17 of the California Code of Civil Procedure, are applicable here.

5. Whether commercial-speech exceptions to the California Anti-SLAPP, contained in Section 425.17 of the California Code of Civil Procedure, are applicable here.

6. Whether, as a matter of California's wrongful-death statute, the category of persons eligible to bring wrongful death actions under California law extend solely to the surviving parents or whether surviving siblings are also eligible under the statute.

7. Whether, under California law, the statute of limitations for statutory survival claims involving the death of a child are measured by the age of the deceased minor or is instead truncated when the child's intestate heir is her father.

8. Whether algorithms are products or services for the purposes of California's products-liability laws.

9. Whether, under California law, paywalled Internet companies have a special-relationship duty to their underage users that they extensively surveil and algorithmically target.

These issues are not only numerous and complex, but they also implicate open questions of law at the appellate level, present issues on which there are

8

acknowledged Circuit splits among the Courts of Appeals, implicate open questions of California law, and implicate questions of California law on which the California appellate courts are also divided.

The issues on appeal implicate questions of Constitutional law, statutory law, common law, federal law, and state law. They implicate complex questions of both procedural law and substantive law.

Moreover, these areas of law are in flux. The case law has changed and developed in significant ways since previous submissions, including through developments that the Supreme Court decide warranted additional review by this Honorable Court and the District Court.

Among these issues, there are novel questions of federal subject-matter jurisdiction and the complex relationship between the state and federal courts in adjudication of disputes. There are also novel questions related to the California's tort system – including duty of care, products liability, and the use of algorithmic targeting to affect the health, well-being and life of young children, including whether companies can be held to account for violations thereof.

Given the nature wrongful-death claims alleged in this case (*i.e.*, Defendant's algorithmically targeting of vulnerable minors in a tortious fashion), and the theories that Defendants relied upon to procure dismissal of the wrongful-death and survival claims below, this appeal is extremely important and yet also extremely complex.

In short, this appeal presents issues of grave significance not only to the surviving family directly party to this appeal and being threatened with ruinous fees but also many other families who lost children as a result of the acts at issue here. Beyond them, a decision on the merits of many of the issues in appeal will very likely affect the way in which companies choose to protect – or ignore – the well-being of children.

Given that this appeal presents matters of extraordinary significance, substantial additional time to research and brief the complex legal issues is warranted.

**Fourth**, the undersigned has been dealing with existing client situations where among some of the most vulnerable persons in our society face imminent harm and devastation. To the extent that the undersigned has been able to work in the period of the last extension, the undersigned needed to help these persons avoid ruination through unlawful actions.

The undersigned is counsel as a small non-profit that represents those that otherwise do not have access to counsel. In several matters, these clients have been unable to find other counsel and are facing ruination if the undersigned did not protect them. For example, in one case a U.S. military veteran who was facing the loss of his house due to unlawful actions taken against him.

10

He needed prompt and urgent legal assistance, which the undersigned provided, and due to that imminent real-world and likely irreversible loss had action not been taken, it had to be taken.  His house was ultimately saved, but he lost a vehicle (through which significantly harms and undermines his ability to continue gainful employment.

In another matter, the client faces patently unlawful and predatory lending activities that, without quick assistance, will destroy his livelihood contrary to black-letter law.  Waiting more would have allowed and permitted this ruination to come to him.  These two situations are client situations where time is of the essence to avoid ruination to some of the most vulnerable persons in our society who otherwise lack legal representation.

**Fifth**, both the undersigned and Mr. Keenan appreciate the need to prosecute this appeal.  It is significant and grave, involving the deaths of many children.  Accordingly, we will not seek extensions for the opening brief beyond August 31, 2026, barring new and extraordinary situations, and recognizing that this extension is sought in light of this extremely complex appeal, other matters that required immediate attention to avoid grievous client harm, a newborn baby (and one-year-old) that presently demand the attention of Mr. Keenan prior to his submission of the opening brief, and serious health issues for a family of the undersigned as well as an acute illness and a chronic health issue.

11

We are unsure of the position of opposing counsel who have not responded to the email inquiry of the undersigned requested an extension. Neither I nor Mr. Keenan have ever opposed an extension request in any forum or for any reason. Both of us regularly offer opposing counsel additional time. With this extension and this commitment to get the brief in on August 31, 2026, we can give opposing counsel a date certain as well as being more than willing to offer many extensions in order to prepare and submit their brief.

\* \* \* \* \*

This Motion is expressly brought under the Federal Rules of Appellate Procedure 2, 26, 27 and Ninth Circuit Rule 31-2.2(b). For the five reasons shown above, including several that demonstrate extraordinary pressures on counsel, on the team, and recent legal developments that accrued since the period of the last extension, there is good cause and extraordinary

Plaintiff-Appellants, the survivors of decedent 15-year-old Bella Herndon, respectfully request 70 additional days to brief the appeal and appreciate the consideration of the Court of their request in order to vindicate the rights of their deceased daughter and sister.

Date: June 22, 2026                      Respectfully submitted,

/s/ Andrew Grimm
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorney for The Estate of Isabella "Bella" Herndon, John Herndon, M.H., a minor, T.H., a minor*

13

## 9TH CIR. RULE 31-2.2(b) DECLARATION OF COUNSEL

I, Andrew Grimm, a counsel for Plaintiff-Appellants the Estate of Isabella "Bella" Herndon, John Herndon, J.H., a minor, and T.H., a minor, hereby declare and attest to the following in support of a 30-day extension of time to file their Opening Appellate Brief and Excerpts of Record, up to and including, October 19, 2022:

(1)     *Current Deadline*:  June 22, 2026.

(2)     *Original Deadline*: January 20, 2026.

(3)     *Length of Extension*:  70 days.  Final extension barring new and extraordinary reasons.

(4)     *Reasons for Extension*:  Stated above and reiterated below.

(5)     *Representation of Diligence*: I believe that reasonable diligence has been conducted in this case given the circumstances.

(6)     *Position of Other Parties*: Unknown.

(7)     *Transcript Status*: The court reporter is not in default with respect to any transcripts.

(8)     *Reciprocity and Counsel*: Neither the undersigned nor any counsel at the Digital Justice Foundation has ever opposed an extension request by an opposing counsel in any form.  We generally maintain a policy and practice of offering additional time—beyond the time requested—to opposing counsel as a matter of

professionalism, courtesy, and in the interest of matters being decided on the merits. I would gladly assent on behalf of my clients to reciprocal extensions for Defendant-Appellee and Ms. Young and her team.

I hereby declare that the above statements that I made in this Declaration are true to the best of my knowledge and belief, and that I understand that these statements are made for use in a court proceeding and are subject to penalty for perjury.

Date: June 22, 2026     Respectfully submitted,

         */s/ Andrew Grimm*
         Andrew Grimm

## CERTIFICATE OF COMPLIANCE

This Motion contains **2,956** words.

This Motion was prepared in Microsoft Word using Times New Roman 14-point font.

Date: June 22, 2026                    Respectfully submitted,

                                       */s/ Andrew Grimm*
                                       Andrew Grimm

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Ninth Circuit by using the

Court's ACMS.


Date: June 22, 2026                    Respectfully submitted,

                                       */s/ Andrew Grimm*
                                       Andrew Grimm